IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

IZELL RIVERS,

    Petitioner,

v.                                                  CASE NO. 4:12-cv-231-MW-GRJ

SECRETARY, DEPT.
OF CORRECTIONS,[1]

    Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by filing a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 and is proceeding pursuant to an Amended Petition. (Doc. 1, 6.) The Respondent filed a response and an appendix with relevant portions of the state-court record. (Doc. 19.) Upon due consideration of the Petition, the Response, and the state-court record, the undersigned recommends that the Petition be denied.[2]

### Summary of State Court Proceedings

Petitioner was charged with: (1) armed robbery with a firearm, (2) aggravated

---

[1] Because Petitioner is an inmate in the custody of the Florida Department of Corrections (DOC), the Secretary of the DOC is the state officer who has custody of Petitioner, and therefore the Secretary is properly named by his official title as the Respondent in this case. *See* Fed. R. Civ. P. 17(d); Rule 2, Rules Governing Habeas Corpus Petitions under § 2254. The **Clerk** is directed to correct the docket accordingly.

[2] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

*Case No: 4:12-cv-231-MW-GRJ*

battery with a firearm, (3) aggravated assault with a firearm, (4) an additional count of aggravated assault with a firearm, and (5) possession of a firearm by a convicted felon. (Doc. 19-1 at 12-13.)  The charges stemmed from a robbery that occurred at a Motel 6 in Leon County, Florida.  After Petitioner proceeded to trial on the first four charges (Doc. 19-1 at 169), a Leon County jury found him guilty as to all four charges.  (Doc. 19-1 at 62-65.)   The trial court sentenced Petitioner to life imprisonment as to count I (armed robbery with a firearm) and to lesser sentences for counts II-IV, with counts II-IV to run concurrently with the sentence set forth in count I. (Doc. 19-1 at 69-80.)

Petitioner appealed his judgment and sentence.  ( Doc. 19-2 at 216-237.)  The First District Court of Appeal affirmed *per curiam.*  (Doc. 19-2 at 239.)

Petitioner filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 in the state court.  (Doc. 19-2 at 246-254.)  In an amended postconviction motion, Petitioner claimed that: (1) his trial counsel was ineffective for failing to call alibi witnesses Tony Johnson, Maurice Smith, and Michael Williams, (2) his behavior during an in custody interrogation was not a confession, and (3) a photo-lineup used during the investigation of the case and later admitted at trial was inconclusive and suggestive.  (Doc. 19-2 at 276-278.)

An evidentiary hearing was held regarding Petitioner's postconviction motion, at which Petitioner represented himself pursuant to an order denying Petitioner's motion for appointment of counsel.  (Doc. 19-2 at 310; Doc. 19-2 at 302-304.)  During the evidentiary hearing, Petitioner clarified that each claim was an ineffective assistance of counsel claim, with ground 2 and 3 interpreted to be claims for ineffective assistance of

counsel for failing to file motions to suppress. (Doc. 19-2 at 313-314.) Petitioner called Maurice Smith to testify at the evidentiary hearing. (Doc. 19-2 at 314.) Maurice Smith testified that Petitioner had picked him up from school sometime around 10:30, but he did not know what had happened before 10:30. (Doc. 19-2 at 315-317.) Maurice Smith also testified that he was "perhaps" involved with the Motel 6 robbery, and had been convicted of a separate motel robbery. (Doc. 19-2 at 315-316.)

Petitioner also called Michael Bell to testify at the evidentiary hearing. (Doc. 19-2 at 317.) Michael Bell testified that sometime in July of 2007, he had spoken to his cousin who told him that she and a friend "had done something at a hotel and needed somebody to take the fall for it." (Doc. 19-2 at 318.) Michael Bell was unable to remember specific details about the robbery that his cousin referenced, but mentioned that she noted she intended to have an individual named "Red" take the fall. (Doc. 19-2 at 320, 318).

The State called Adam Ruiz ("Ruiz"), the attorney who represented Petitioner at trial. (Doc. 19-2 at 324.) Ruiz testified that he had no good faith basis to call an alibi witness because Petitioner had mentioned that he was present during the robbery. (Doc. 19-2 at 326-327.) Regarding Petitioner's claim that Ruiz should have moved to suppress the confession, Ruiz testified that he attempted to bring certain facts from the interrogation video out during cross examination. However, Ruiz did not move to suppress the statements made by Petitioner because he did not believe there was a legal basis to do so, especially in light of a *Miranda* waiver that had been admitted in evidence. (Doc. 19-2 at 328-330.)

As to Petitioner's claim that counsel was ineffective for failing to suppress the photo identification lineup, Ruiz testified that he did not believe that there was a legal basis to suppress the lineup because the positive identification was subject to a credibility determination and not the admissibility of the document. (Doc. 19-2 at 333-335.) Instead, Ruiz thought the best approach towards attacking the positive identification was to strongly cross examine the victim, which he had done at trial. (Doc. 19-2 at 335.)

At the conclusion of the evidentiary hearing, the court reviewed Petitioner's claims and ultimately denied relief. (Doc. 19-2 at 346-349.) Petitioner appealed the trial court's order to the First District Court of Appeal, but the First District affirmed per *curiam* and denied rehearing. (Doc. 19-2 at 352; Doc. 19-3 at 10, 15.)

### Section 2254 Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), the petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct. *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir.2011); see § 2254(e) (1).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-406 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002) (citing *Williams* ). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529

U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require citation of our cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8 (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it" *Holland v. Jackson,* 542 U.S. 649, 652 (2004).

In *Gill v. Mecusker*, 633 F.3d 1272 (11th Cir. 2011), the Eleventh Circuit clarified how the federal habeas court should address the "unreasonable application of law" and the "unreasonable determination of facts" tests. The court acknowledged the well-settled principle that summary affirmances, such as the Florida First District Court of Appeal's in this case, are presumed adjudicated on the merits and warrant deference. *Id*. at 1288 (citing *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 784–85 (2011), and *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir.2002)). "A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or unreasonably determined the facts requires only a decision, not an opinion. *Id*. at 1291 (citing *Harrington*, 131 S.Ct. at 784). Yet, the Supreme Court has never squarely addressed whether under the "unreasonable application" test a federal habeas court "looks exclusively to the objective reasonableness of the state court's ultimate conclusion or must also consider the method by which the state court arrives at its conclusion." *Id.* at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244–45 (5th Cir.2002) (summarizing the emerging circuit split)). The Eleventh Circuit concluded that district

courts must apply the plain language of § 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not "evaluate or rely upon the correctness of the state court's process of reasoning." *Id.* at 1291. In short, the court stated, "the statutory language focuses on the result, not on the reasoning that led to the result." *Id.*

In light of *Gill,* the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it. *Id*. at 1292. A federal habeas court can consider the full record before it to answer "the only question that matters[:]" whether the state court's decision was objectively unreasonable. *Gill*, 133 F.3d at 1290.

## Ineffective Assistance of Counsel

Because Petitioner's claims allege ineffective assistance of counsel, a review of the applicable law is necessary. Under *Strickland v. Washington*, 466 U.S. 668, 677-78 (1984), to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "The

relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).  There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001).  "To uphold a lawyer's strategy, [the Court] need not attempt to divine the lawyer's mental processes underlying the strategy."  *Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en banc).  "No lawyer can be expected to have considered all of the ways [to provide effective assistance]."  *Id*.

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on.  The lawyer's strategy was course A.  And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  *Strickland*, 466 U.S. at 693.  Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome."  *Id*.

When, as here, the state courts have denied an ineffective assistance of counsel

claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is a difficult one. *Harrington* 131 S.Ct. at 786.  The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1).  As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law."  *Harrington*, 131 S.Ct. at 785 (quotation marks omitted).  And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id*. at 786.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*.  So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*.  Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted.  *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one."  *Id.* at 788.   When combined with the extra layer of deference that § 2254 provides, the result is double deference and

the question becomes whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*. Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

## DISCUSSION

### *Claim 1: Failure to Call More Than One Alibi Witness at Trial*

Petitioner contends that his trial counsel, Ruiz, rendered ineffective assistance by failing to call alibi witnesses at his trial. (Doc. 6 at 4.) He argues that Ruiz had the potential witnesses' addresses and phone numbers and that had Ruiz called them to testify as alibi witnesses, they would have provided testimony that supported an innocence claim. *Id*.

This alibi witness claim was also the first claim in Petitioner's amended postconviction motion pursuant to Florida Rule of Criminal Procedure 3.850. (Doc. 19-2 at 276-277.). In rejecting this claim following the evidentiary hearing, the trial court assessed the claim under the *Strickland* standard and found as follows:

> In reference to your first ground, sir, I'm going to find that you have not sustained your burden to show that Mr. Ruiz's performance in this case fell below the standard of professionalism as required under *Strickland v. Washington*. It is clear from the record of the testimony today that Mr. Ruiz hired an investigative firm to look into the circumstances regarding the robbery. And it is clear that based on his testimony that you admitted to committing the robbery.
>
> So therefore, attorneys, by the rules of professional conduct, are not allowed to file motions based on baseless requests or necessities that their client may have. Mr. Ruiz did, as I asked him, discuss this with you.

> And therefore – and I will find that based on his actions and discussions with you that the first ground, I will not find ineffective assistance of counsel as to Mr. Ruiz in that regard; in addition to his 30 years of service, 20 years as a criminal defense lawyer.
>
> You did call two individuals to testify on your behalf, sir, but they – there was no linkage as to how their testimony really would have affected the outcome. And plus added to that, there was an admission by you of the robbery, but the robbery was committed under duress. What an alibi defense means, sir, is that you were not there and can provide witness to establish under law. It is required to be filed. And if there's not a good faith basis on behalf of your lawyer to file it, it can't be filed. So based on ground one, I'm going to deny ground one.

(Doc. 19-2 at 346-347.)

"Complaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative." *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980). In this case, Ruiz testified that Petitioner had mentioned in a jail interview with a private investigator Ruiz had hired that Petitioner had committed the robbery, but did so under duress. (Doc. 19-2 at 326-327.) Ruiz also testified that he remembered that the confession tape he viewed included another instance where Petitioner stated he had committed the robbery under duress. (Doc. 19-2 at 329.) Accordingly, Ruiz testified that, given the information mentioned above, he would have had no good faith basis to call an alibi witness. (Doc. 19-2 at 326-327.) This portion of Ruiz's testimony is consistent with Investigator Lewis's testimony during the trial. Investigator Lewis testified that during his interview with Petitioner, Petitioner told him that he was forced to commit the robberies by persons who allegedly

threatened him into committing the crime.  (Doc. 19-1 at 202-207.)

Also at the evidentiary hearing, Petitioner called two witnesses in regard to his first claim, but neither witness provided any information that would support an alibi defense.  One witness, Michael Bell, testified that Ms. Thornton (who had testified in the original trial) mentioned vague statements to him regarding Petitioner's involvement in the robbery, but this conversation allegedly took place after the robbery already had occurred.  (Doc. 19-2 at 319-321.)  Additionally, Michael Bell testified that he "hadn't the faintest idea of who [Petitioner] was."  (Doc. 19-2 at 320.)  Therefore, even absent Ruiz's testimony, Michael Bell could not have been the source of an alibi defense for Petitioner.  The other witness was Maurice Smith.  Maurice Smith testified that Petitioner picked him up from school "a little bit before 11:00, like 10:30 or something like that," but he did not know what happened before 10:30.  (Doc. 19-2 at 315-317.)  Neither of the testimony of these witnesses is sufficient to establish an alibi defense for Petitioner, especially in light of Petitioner's statements that he committed the robbery under duress.

Therefore, the Court concludes that based on this record, the state court's rejection of this claim on the performance and prejudice prongs of *Strickland* was not unreasonable.  Accordingly, Petitioner is not entitled to relief on this claim.

### Claim 2: Ineffective Assistance Concerning Confession

Petitioner contends in his second ground for relief that Ruiz was ineffective for failing to suppress his confession.  (Doc. 6 at 4.)   As support for this claim, Petitioner argues that his confession was illegal because it "was made without any witness to support such confession."  *Id*.

In rejecting this claim following the evidentiary hearing, the state court assessed the claim and found as follows:

> As to ground two, I note that as part of the record the *Miranda* warning card is admitted as State's Exhibit no. 9, and I will find that in accordance with current law, law in Florida is as long as the police officers have read you your *Miranda* rights and you sign the acknowledgment of rights and waiver forms, that does not necessarily indicate that your confessions needs to be suppressed.
> Also, as a standard jury instruction which is contained in the record of the court file it states that the jury could either accept or reject your confession at any time.

(Doc. 19-2 at 347.) The First DCA *per curiam* affirmed without written opinion. (Doc. 19-3 at 10.)

The trial court's rejection of this claim was premised on the signed *Miranda* rights acknowledgment card that was entered into evidence during trial. (Doc. 19-1 at 158.) A signed *Miranda* waiver is usually strong evidence that the defendant has waived his rights, but it is not necessary to establish such. *United States v. Bernal-Benitez*, 594 F.3d 1303, 1319 (2010). *See North Carolina v. Butler*, 441 U.S. 369, 373 (1979) ("An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver.").

In addition to the signed waiver, Investigator Lewis also testified at trial in detail as to the process by which he read Petitioner his *Miranda* rights and the process by which Petitioner signed his *Miranda* warning card. (Doc. 19-1 at 200-202). During the evidentiary hearing Ruiz provided testimony that acknowledged these facts as well as provided insight as to why he did not file a motion to suppress:

> My recollection of the trial was, and the transcript would speak for itself, there was a signed *Miranda* waiver that was admitted into evidence that I received in discovery which had my client's signature, you know, which really didn't lend much to having a good faith basis to file a suppression based on that document. Had the document not been present and it was, you know, my client's word against law enforcement's word then, you know, depending on other factors there may be something there. But I didn't see a legal basis to file the suppression. So without a legal basis, I can't go into court, once again.

(Doc. 19-2 at 328-329.)

Ruiz also acknowledged that he extensively questioned Investigator Lewis during trial. (Doc. 19-1 at 209-213). Counsel is not ineffective for failing to raise a meritless objection. *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir.). Trial counsel cannot be deemed deficient for failing to file a motion that would have been at odds with the facts presented at trial and state law. Accordingly, on this record, Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of *Strickland,* or an unreasonable determination of the facts in light of the evidence adduced in state court.

### Claim 3: Ineffective Assistance Concerning Photo-Identification Lineup

Petitioner contends that his trial counsel rendered ineffective assistance by failing to suppress the photo identification lineup utilized by investigators in this case. (Doc. 6 at 4.). Although Petitioner contends that the photo lineup was wholly suggestive, he failed to provide any supporting facts in either his original 3.850 motion or his § 2254 petition. (Doc. 19-2 at 278; Doc. 6 at 4.).

Like Petitioner's other claims, this claim was subject to an evidentiary hearing and was rejected by the state court:

> Also, the photo lineup situation that is attached which you claim should have been suppressed, again based on the testimony of Mr. Ruiz, based on the investigation of Three Eye and based on the cross-examination that the photo lineup - - and you have attached it for the Court's indication in review, and I'm looking at Exhibit B.  And I will note all six individuals on your Exhibit B are black males and look fairly similar to one another.  So they are not unduly suggestive, at least in the Court's mind at this point...So I find that given the totality of the testimony here today that you have failed to meet your burden...

(Doc. 19-2 at 347-348.).

Ruiz testified during the evidentiary hearing as to why he did not move to suppress the photo lineup:

> My recollection of the photo lineup was I think the allegation was that the person who committed the robbery was wearing, I think, a baseball cap and sun glasses, I think.  And there was a – you know, there was a surveillance there, I think, that didn't come out that well.  And then the victim is showed the photo lineup and I think there was an issue with respect to the neck, I think, of the person in the lineup, and whether or not the victim was identifying, you know, the person that committed the robbery or just the neck...And so legally speaking from my perspective once again there wasn't really a legal basis to suppress the confession.  I felt like it went to, you know, the weight of the evidence rather than to its admissibility.  I didn't see that it was inadmissible.  I mean, you know, we can attack the person making the – attack is a strong word.  You know, we can strongly cross-examine the victim in a case such as that and determine whether or not the identification is good or not, as well as attacking the officers, the way he's conducted the lineup, which we did.  But I don't think – in my opinion, anyway, a legal opinion, there wasn't a legal basis to suppress it.  It went to the weight, not the admissibility.

(Doc. 19-2 at 333-335.).

Ruiz's testimony at the evidentiary hearing was corroborated by the trial transcript which demonstrated that Ruiz cross-examined the victim, who identified Petitioner in the photo lineup, and Investigator Lewis, who conducted the photo lineup.  (Doc. 19-1 at 209-210.).  Ruiz's cross-examination of Investigator Lewis included the following

discussion:

> Q: You stated that when this photo lineup was shown [to] Mr. Hill, you stated that initially he didn't pick out [the Petitioner], correct?
> A: It was not immediate.
> Q: In fact, it was not until you make a comment to him with respect to things he should or should not consider, such as facial hair, when he identified Mr. Rivers, correct?
> A: That is correct.
> Q: Is this standard procedure to make comments when someone is attempting to identify someone in a case such as this?
> A: No, it's not.

(Doc. 19-1 at 209-210.). Ruiz also cross-examined Mr. Hill, the victim, at trial as follows:

> Q: And when you looked at that photo lineup, you were stuck between a couple of photos, were you not?
> A: You mean the second time around?
> Q: Correct, the second time around.
> A: Yes.
> Q: So, the second time around, it wasn't as if you just immediately picked out [Petitioner] from the photo lineup; is that fair to say?
> A: From the very – no.
> Q: Actually, you were more – what kind of caught your attention in that lineup was the size of the individual's neck?
> A: Yes.
> Q: And not the face, correct?
> A: Yes.
> Q: So you identified a man with a large neck?
> A: Yes...
> Q: You can't give any indication as to what his age was?
> A: No.
> Q: Yet, you want the jury to believe that you accurately picked him out of the photo lineup?
> A: Yes.

(Doc. 19-2 at 140-143.).

The state court's determination that Ruiz's decision not to suppress the photo-lineup was reasonable is not an improper application of *Strickland*. The trial testimony demonstrates that Ruiz attempted to attack witness credibility issues by referencing

witness conduct regarding the photo lineup during trial. (Doc. 19-1 at 209-210.); (Doc. 19-2 at 140-143.).

Further, the state court also acknowledged the nature of the lineup itself and noted that it did not appear to be suggestive, making Ruiz's statements that he had no legal basis to file a motion to suppress and Ruiz's decision instead to cross-examine the parties involved even more reasonable. (Doc. 19-2 at 333-335.).

Accordingly, there is certainly a reasonable argument that counsel satisfied *Strickland's* deferential standard. Moreover, Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of, federal law, or an unreasonable determination of the facts in light of the evidence adduced at trial. Petitioner, therefore, is not entitled to habeas relief on this claim.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, for the foregoing reasons, it is respectfully **RECOMMENDED:**

1. The Amended Petition for writ of habeas corpus (Doc. 6) should be **DENIED**.

2. A certificate of appealability should be **DENIED.**

**IN CHAMBERS** this 1st day of April 2015.


*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge


**NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.